# Exhibit B - Complaint

Electronically FILED by
Superior Court of California,
County of Los Angeles
4/04/2024 9:37 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By S. Ruiz, Deputy Clerk

1  **RODNEY S. DIGGS (SBN 274459)**
   rdiggs@imwlaw.com
2  **TYRINE S. AMAN (PL 504978)**
   taman@imlwaw.com
3  **IVIE McNEILL WYATT PURCELL & DIGGS**
   **A Professional Law Corporation**
4  444 South Flower Street, Suite 3200
   Los Angeles, California 90071
5  Telephone:    (213) 489-0028
   Facsimile:    (213) 489-0552
6
   **TYRONE A. BLACKBURN, ESQ.** (*pro hac vice pending*)
7  tblackburn@tablackburnlaw.com
   **T. A. Blackburn Law, PLLC**
8  1242 E. 80th St 3rd Floor
   Brooklyn, NY 11236
9  Telephone: (347) 427-5999

10 Attorneys for Plaintiff, **GRACE O'MARCAIGH**

11          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

12                **FOR THE COUNTY OF LOS ANGELES**

13
14  GRACE O'MARCAIGH,  an individual,      )    CASE NO.:  24STCV08571
                                           )
15                                         )    **COMPLAINT FOR DAMAGES**
              *Plaintiff,*                 )
16                                         )    1.  **Assault**
                                           )    2.  **Battery**
17        vs.                              )    3.  **Sexual Assault**
                                           )    4.  **Premises Liability**
18                                         )    5.  **Aiding and Abetting**
    CHRISTIAN COMBS, an individual,        )    6.  **Intentional Infliction of Emotional**
19  SEAN COMBS, an individual, and JOHN    )        **Distress**
20  and JANE DOES 1-10 and                 )    7.  **Negligent Infliction of Emotional**
    ABC CORPORATIONS.  1-10.               )        **Distress**
21                                         )
              *Defendants.*                )    **DEMAND FOR JURY TRIAL**
22  _____)

23
24        Plaintiff GRACE O'MARCAIGH ("PLAINTIFF"), by and through her attorney of

25 record, allege as follows:

26                              **PARTIES**

27        1.    Plaintiff  GRACE  O'MARCAIGH  (hereinafter  "PLAINTIFF")  is  a  European

28 Caucasian female who worked as a Stewardess in the Yachting Industry since 2018.

2.      PLAINTIFF's love of yachting started at an early age and was the foundation on which she had built her career.

3.      Through yachting, PLAINTIFF has traveled the world, met many new friends and colleagues, and enjoyed a very successful career.

4.      Throughout her career, PLAINTIFF has always worked well in teams and received high praises and great feedback from her managers and colleagues.

5.      PLAINTIFF also consistently received exemplary reviews from her clients for her excellent customer service as well as glowing references over the past few years.

6.      PLAINTIFF has consistently received promotions and has never been rejected for any position she has applied for.

7.      Prior to being sexually assaulted by Defendant Christian Combs (hereinafter "DEFENDANT C. COMBS"), PLAINTIFF planned to work the entirety of her career in hospitality and the yachting industry. Unfortunately, those plans have been derailed due to the trauma PLAINTIFF continues to have as a result of the assault.



Christian "King" Combs

COMPLAINT FOR DAMAGES

8.      DEFENDANT C. COMBS is a twenty-five-year-old autotuned and heavily edited rapper.

9.      Unfortunately, as the saying has it, the apple does not fall far from the tree.

10.     Defendant Sean Combs ("DEFENDANT S. COMBS"), who has also been accused of several acts of sexual assault, rape, sexual violence, and drugging, among other deplorable conduct, is the father of DEFENDANT C. COMBS, who has seemingly taken after his father and the family business of reckless partying, drugging others, sexual violence, and other illegal conduct.

11.     Specifically, DEFENDANT C. COMBS is the second child of billionaire DEFENDANT S. COMBS and his late ex-partner, Kim Porter.

12.     Upon information and belief, DEFENDANT C. COMBS resides in the city of Beverly Hills, California in Los Angeles County, California.



Sean Combs

13.     Defendant Sean Combs (hereinafter "DEFENDANT S. COMBS") is a rapper and record executive popularly known by his stage names Puff Daddy, Puffy, P. Diddy, Diddy, Brother Love, or Love.

14.     DEFENDANT S. COMBS became famous in the early 1990s with his record label Bad Boy Records. He rose to prominence in the music and entertainment industry over the decades and is regularly revered as a hip-hop mogul and top rap/hip-hop producer in the industry.

15.     Upon information and belief, DEFENDANT S. COMBS resides in the city of Beverly Hills, California in Los Angeles County, California.

16.     During the relevant period, Defendants John and Jane Does 1-10 are currently unknown individuals and/or employees who aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment, Defendants ratified, embraced, and added to this conduct. As parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

17.     During the relevant period, Defendants ABC Corps. 1-10 are currently unknown entities who employed Plaintiff or aided and/or abetted in the commission of conduct complained of herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these entities or individuals by name.

## JURISDICTION

18.     This Court has personal jurisdiction over the Defendants under and consistent with the Constitutional requirements of Due Process in that the Defendants, acting directly or through their agents or apparent agents, committed one or more of the following:

a. The transaction of any business within the state;

b. The making of any contract within the state;

c. The commission of a tortious act within this District; and

d. The ownership, use, or possession of any real estate in this state.

## FACTS COMMON TO ALL CAUSES OF ACTION

19.     In or around July 2022, GRACE O'MARCAIGH ("PLAINTIFF") was working on Victorious, a superyacht built by "Akyacht" and owned and operated by Fraser.

20.     PLAINTIFF worked as a temporary Second Stewardess for the company Equiom FW049 IC.

21.     PLAINTIFF worked in her temporary position for a month on Victorious then was subsequently offered a permanent position due to her professionalism, passion for the job, and

great customer service skills.

22.     In or about September 2022, PLAINTIFF had been part of a dedicated team at the Monaco Boat Show tasked with selling charters for Victorious to high-net-worth clients such as C. COMBS and S. COMBS.

23.     In December 2022, PLAINTIFF and her team were advised that the yacht had been successfully chartered for the 2022 holiday period.

24.     PLAINTIFF changed her personal holiday family plans to accommodate the charter service and flew to St. Martin to prepare the yacht for service.

25.     PLAINTIFF soon learned the client who chartered the yacht was DEFENDANT S. COMBS and his family.

26.     DEFENDANT S. COMBS leased the yacht, and had full control of the staff and premises of the yacht.

27.     Although PLAINTIFF was used to working in discreet and VIP environments, this was one of her first times working with an "A-list celebrity." Because of this, PLAINTIFF and the rest of the team assigned to the yacht were determined to make the holidays special for DEFENDANT S. COMBS and his family.

28.     For the duration of the trip, PLAINTIFF was assigned the 6:00 p.m. to 6:00 a.m. shift along with one other crew member. This shift, commonly known as the "late shift," was very busy.

29.     Late shift duties included dinner and drink service for the clients for the entire 12-hour period. Dinner and drink service had to be carried out with minimum staff support or backup during the night shift since only two individuals were assigned.

30.     Although DEFENDANT S. COMBS was always typically on the yacht, his sons, DEFENDANT C. COMBS and Justin Combs, were staying in a luxury villa nearby but joined their father aboard the yacht most evenings.

31.     During the second week of the charter service, there was a significant amount of partying and drug use, which caused the guests to stay up throughout the night.

32.     The make-up of the yacht quickly evolved from just DEFENDANT S. COMBS and his family to include a constant rotation of suspected sex workers and other A-List celebrities such

5

as French Montana and actor Cuba Gooding, Jr.

33.    DEFENDANT S. COMBS turned what was sold as a wholesome family excursion into a hedonistic environment.

34.    According to PLAINTIFF, it resulted in an unexpected increase in workload for her and her colleagues as well as unwanted exposure to unlawful drug use, sex work, and general chaos.

35.    It also created an extremely hazardous environment; for example, guests often demanded drink service until 6:00 a.m., staff was often treated with disrespect, suspected sex workers were sprawled out unconscious about the yacht, and it was difficult to distinguish which bottles of alcohol were laced with drugs and which bottles were not.

36.    It is important to note that as a bartender, PLAINTIFF understands the impact of alcohol and the likelihood that a person would not generally become intoxicated following one mixed drink. Because of this, PLAINTIFF found it very suspicious that after one shot of DeLeon tequila or one mixed drink, various women on the yacht would be falling over themselves, panicking, or passing out. This led PLAINTIFF to reasonably believe that the alcohol given to these women was likely laced with drugs.

37.    PLAINTIFF was aware that Rodney Jones ("Mr. Jones"), a producer who was employed to work on the Love Album: Off the Grid, was required to be on standby for musical recordings often late into the night.

38.     The Love Album: Off the Grid is the fifth studio album by American rapper and record producer Sean "Diddy" Combs, released on September 15, 2023.

39.    Mr. Jones was accepted as an extended member of the service staff and spent time with PLAINTIFF at the service bar and piano room, where he played the piano.

40.    On or about the early morning of December 28, 2022, the evening shift started as normal. At about 5:00 a.m., PLAINTIFF was messaged on the on-duty phone that DEFENDANT C. COMBS would be joining the yacht by tender, a smaller craft that runs back and forth from a larger yacht and used for servicing and providing support and entertainment to a private or charter yacht. DEFENDANT C. COMBS wanted to be brought over to Victorious to record in the yacht's makeshift recording studio with Mr. Jones.

41.     Although it was not unheard of for DEFENDANT C. COMBS to come aboard at such a late hour, he usually stayed at his dwelling offshore overnight, particularly when there was no party on board on any given night.

42.     DEFENDANT C. COMBS arrived in the tender and was heavily intoxicated. PLAINTIFF suspects DEFENDANT C. COMBS was intoxicated from a mixture of narcotics and alcohol.

43.     Upon entering the recording studio, DEFENDANT C. COMBS immediately started ordering that tequila shots be poured from a bottle of alcohol he may have brought onto the yacht.

44.     Ironically, DEFENDANT C. COMBS was playing Cassie's "Me and U" was playing in the background. Cassie was an artist under S. COMBS and was his former love interest who also accused S. COMBS of serious sexual and mental abuse.

45.     In the studio, DEFENDANT C. COMBS asked that PLAINTIFF bring the shots to the recording studio/sundeck, and PLAINTIFF obliged as she was the only serving steward at the time.

46.     PLAINTIFF noticed immediately that he was particularly attentive with her, which she considered very inappropriate.

47.     However, PLAINTIFF began to become concerned when he insisted that she take shots of the tequila he may have brought on board the yacht.

48.     Under pressure and wanting to be polite, PLAINTIFF obliged. Prior to this, the Plaintiff witnessed DEFENDANT S. COMBS create a "Black Santa Video," which showed him demanding the Captain, various head of departments, and crew take a shot of Tequila with him.

49.     As this was a pattern established by the Captain of the yacht and DEFENDANT S. COMBS, Plaintiff felt comfortable knowing that Mr. Jones was present and didn't think anything more of it. She felt that she would take one shot, and he would let her return to the pantry.

50.     According to PLAINTIFF, at this point, the mood changed, and things became sinister. DEFENDANT C. COMBS insisted that PLAINTIFF stay chatting and that she sit beside him.

51.     PLAINTIFF resisted and remained polite, asking to leave. DEFENDANT C.

7

COMPLAINT FOR DAMAGES

COMBS became aggressive and insisted that PLAINTIFF take a further shot and sit beside him.

52.    At this point, DEFENDANT C. COMBS violently grabbed PLAINTIFF's arm and began hurting her. He pulled PLAINTIFF to the seat beside him and prevented her from getting up.

53.    PLAINTIFF insisted that she had to return to the pantry, but her pleas fell on deaf ears. Angered, DEFENDANT C. COMBS forced PLAINTIFF to take another shot.

54.    PLAINTIFF was quite scared and realized she was in a very dangerous situation. PLAINTIFF was also feeling the effect of the tequila shots and quickly suspected that the Tequila was spiked.

55.    At this point, the situation escalated, and PLAINTIFF started to be physically assaulted by DEFENDANT S. COMBS. He touched PLAINTIFF's legs, breasts, anus, and vagina. He also tried to kiss her and proceeded to kiss her neck, face, and hands.

56.    The timeline at this point is very blurry and vague to PLAINTIFF, as she does not recall exactly what happened to her due to the effects of the spiked Tequila shots.

57.    Luckily for PLAINTIFF, due to DEFENDANT S. COMBS' insistence on Mr. Jones recording everything, Mr. Jones has an audio recording of DEFENDANT C. COMBS drugging and sexually assaulting PLAINTIFF.

58.    Below is the transcript of DEFENDANT C. COMBS forcing PLAINTIFF to consume the suspected laced shots of DeLeon tequila:

Audio 1

**DEFENDANT C. COMBS:** Yo, it's shot o'clock.

**PLAINTIFF:** No, I'm not doing shots. Christian?

**DEFENDANT C. COMBS:** Everybody, we got to take a shot.


Audio 2

**PLAINTIFF:** I'll just put the ledge.

**DEFENDANT C. COMBS:** No, no, no. Take the whole thing.

**PLAINTIFF:** No, you will take it as well.

**DEFENDANT C. COMBS:** Take the whole shot.

**PLAINTIFF:** I'm only doing it as long as you take it as well.

**DEFENDANT C. COMBS:** I ain't going to lie, I'm not taking nothing. Please, please, take the shot.

**PLAINTIFF:** You are drugging me?

**DEFENDANT C. COMBS:** Take the shot. Hey, yo, play another beat one time because now--

59.     Below is the transcript of DEFENDANT C. COMBS' sexual assault of PLAINTIFF:

[Cassie *Me & U* featuring P. Diddy and Young Joc song playing in the background]

**PLAINTIFF:** This is not an offer.

**DEFENDANT C. COMBS:** You said what?

**PLAINTIFF:** I can't. I'm swapping out. I can't do it. I'm sorry, darling.

**DEFENDANT C. COMBS:** Nah, we need you.

**PLAINTIFF:** I'm going to stop. Stop. I have to go. I have to go. Honestly, I'm like already losing sleep. I have to go now.

**DEFENDANT C. COMBS:** You're the best one on this ship, though.

**PLAINTIFF:** What do you mean?

**DEFENDANT C. COMBS:** Who's going to replace you?

**PLAINTIFF:** Who's going to replace me?

**DEFENDANT C. COMBS:** Fuck that. That's going to be trash, though. You feel me?

**PLAINTIFF:** Excuse me, you don't touch my legs like that. I'll move my legs where I want to.

**PLAINTIFF:** If I want to do this, then I will. You don't touch my legs like that.

**DEFENDANT C. COMBS:** Listen, you and everybody in the crew, it's great.

**PLAINTIFF:** I can't. I have to go down. I have to go down.

**DEFENDANT C. COMBS:** No. Yo, tell me, listen.

**PLAINTIFF:** What?

**DEFENDANT C. COMBS:** Like say you're just vibing with me the whole time.

**PLAINTIFF:** I can't. I promise you, I wish I could, but I can't. Unless I say that you guys

9

requested me.

**DEFENDANT C. COMBS:** Yes, who can I talk to right now? Who can I talk to? I'm going to say I requested you right now.

**PLAINTIFF:** Well, you can take your hand off my ass for the first thing.

60.    According to the PLAINTIFF, she said she would have to be requested because she knew anyone of authority who would approve the request was asleep. Defendant C. Combs would not have been able to contact them, and PLAINTIFF could then leave.

61.    After being assaulted in the recording studio, PLAINTIFF attempted to resume her duties that night.

62.    She made her way to the pantry, where she met another steward who was assigned to take over the shift. Her colleague recognized that PLAINTIFF was visibly intoxicated, in shock, and trying to finish the shift.

63.    Shortly after returning to the pantry, DEFENDANT C. COMBS called for PLAINTIFF. He went looking for her and demanded that she find him a place to sleep on the yacht.

64.    At such a late hour of the night, there were no spare cabins for DEFENDANT C. COMBS to stay in. Despite this, he refused to go back to shore. The most acceptable place for him to sleep that night was in the cinema.

65.    PLAINTIFF directed him to the cinema, which was commonly used as an extra sleeping area. The cinema has one door to exit and enter. PLAINTIFF entered the room, and DEFENDANT C. COMBS blocked her from exiting.

66.    PLAINTIFF retreated to a corner of the room, and DEFENDANT C. COMBS became physical and extremely aggressive. He cornered PLAINTIFF and started to grope her. PLAINTIFF pushed him back constantly.

67.    DEFENDANT C. COMBS then took off all of his clothes.  His penis was erect, and he grabbed her arms and was trying to force PLAINTIFF to perform oral copulation on him.

68.    The PLAINTIFF began fighting DEFENDANT C. COMBS, and not long after, her partner on board entered the cinema. This startled DEFENDANT C. COMBS, and the PLAINTIFF was finally able to leave.

COMPLAINT FOR DAMAGES

69.    The PLAINTIFF'S partner became concerned and went looking for the PLAINTIFF after she had not returned to her room after her shift had ended.

70.    The morning after, PLAINTIFF complained to the yacht's captain, Captain Petar Milkov.

71.    Captain Milkov berated the PLAINTIFF.  He lacked compassion or concern, failed to investigate, and insisted that the PLAINTIFF was probably voluntarily partying with the guests. She was not.

72.    Captain Milkov added insult to injury by assigning PLAINTIFF to work in front of the house, which required personally serving DEFENDANT C. COMBS while they were on the yacht. PLAINTIFF was not provided an option to be isolated or not have to serve DEFENDANT C. COMBS.

73.    PLAINTIFF was twenty-five years old at the time of the attack.

74.    Based on information and belief, DEFENDANT S. COMBS' employees, including his drug mule Brendan Paul, his Chief of Staff Kristina Khorram, and his second in line Frankie Santella, learned of what occurred and informed DEFENDANT S. COMBS.

75.    Shortly after, Captain Milkov received a generous tip from DEFENDANT S. COMBS in order to keep Captain Milkov quiet and keep him from protecting PLAINTIFF or taking action on her behalf.

76.    Only a few members of the ship's staff were required to write statements. PLAINTIFF and her partner were the only two staff members not interviewed and not asked to write a statement.

### AS A RESULT OF DEFENDANT C. COMBS' SEXUAL ASSAULT PLAINTIFF HAS SUFFERED

77.    Below are images of PLAINTIFF's bruises because of DEFENDANT C. COMBS violently grabbing her and attempting to force her to perform oral copulation:

COMPLAINT FOR DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



COMPLAINT FOR DAMAGES





COMPLAINT FOR DAMAGES



COMPLAINT FOR DAMAGES

78.     According to PLAINTIFF, the past year (2023) has been the most deeply traumatizing time of her life.

79.     After DEFENDANT C. COMBS' sexual assault and the subsequent coverup orchestrated by DEFENDANT S. COMBS and his staff, PLAINTIFF was isolated and retaliated against on the Yacht.

80.     This isolation and retaliation finally resulted in PLAINTIFF's termination by Captain Petar Milkov on or around May 10, 2023.

81.     In addition to losing her employment, PLAINTIFF also lost her longtime partner, with whom she had planned a future. PLAINTIFF'S partner was never the same after seeing PLAINTIFF's bruises on her body because of DEFENDANT C. COMBS' sexual assault and having to deal with the mental and emotional ramifications, so they separated.

82.     PLAINTIFF's mental health deteriorated to the point that she was medicated and required intensive therapy. Additionally, she fell into a deep depression and was unable to fully carry out her maid of honor duties at the wedding of her only sister in June 2023, which she had been looking forward to doing for over eighteen months.

83.     PLAINTIFF's anxiety and panic attacks prevented her from securing another permanent position in the Yachting industry in 2023.

84.     PLAINTIFF also developed a severe eating disorder as a result of the attack due to the shame and mental warfare she was experiencing that affected her body image and appetite.

85.     On several occasions, the effects of DEFENDANT C. COMBS' sexual assault led PLAINTIFF to have severe suicidal ideations.

86.     In addition to PLAINTIFF's psychological trauma, her physical health began to deteriorate.  PLAINTIFF had several epileptic seizures. These seizures resulted in PLAINTIFF losing her ability to privately do things she was accustomed to doing alone. PLAINTIFF now requires supervision to do basic activities like swimming and bathing and is not required to inform people in public places that she is epileptic and requires supervision.

**PREMISES LIABILITY AND
AIDING AND ABETTING FOR DEFENDANT S. COMBS**

87.     According to the PLAINTIFF, DEFENDANT S. COMBS chartered the Yacht and

assumed responsibility for the actions of himself, his guests, and his family.  Upon information and belief, DEFENDANT S. COMBS fostered and encouraged an environment of debauchery.  There was always a party atmosphere filled with suspected sex workers, suspected laced alcohol, violence, and sheer disrespect of women and the Yachts crew.

88.    Upon information and belief, DEFENDANT S. COMBS did not have any safeguards in place to ensure there was no excessive drug use, no excessive drinking, and no importation of purported sex workers.

89.    DEFENDANT S. COMBS' apparent failure to ensure there was a safe environment on the Yacht was intentional.  On one occasion, Kristina Khorram, DEFENDANT S. COMBS' chief of staff, instructed Plaintiff to ensure that the entire bar area was stocked with DeLeon Tequila and Ciroq Vodka.  It was important for DEFENDANT S. COMBS to be surrounded by these bottles.  On this occasion, DEFENDANT S. COMBS was visibly intoxicated.

90.    PLAINTIFF is unsure if he was high from drugs, alcohol, or both.  Out of nowhere, Kristina Khorram quickly approached PLAINTIFF and ordered her to remove all the Ciroq and DeLeon bottles.  She was informed that (REDACTED 1)[1] and (REDACTED 2)[2] were boarding the Yacht.  At that point, DEFENDANT S. COMBS exited the room, (REDACTED 1) and (REDACTED 2) entered the room, and DEFENDANT S. COMBS returned, sober, holding his newborn daughter.  This all occurred within less than an hour.

91.    This incident led PLAINTIFF to believe that DEFENDANT S. COMBS knew right from wrong and had the ability and wherewithal to determine that the environment on the Yacht was safe.  He intentionally created an unsafe environment that gave license to DEFENDANT C. COMBS to believe that he was free to sexually assault PLAINTIFF.

92.    DEFENDANT S. COMBS allowed DEFENDANT C. COMBS and his friends to behave carelessly, as they observed and mimicked his actions.

93.    According to PLAINTIFF, on many occasions, she witnessed young girls visiting the boat, stay for less than 30 minutes in a cabin with a guest and leave. This led PLAINTIFF to believe these girls were sex workers.

---

[1] A famous female Comedian.
[2] Wife of a famous comedian and founder of a New York-based charity.

COMPLAINT FOR DAMAGES

94.     According to PLAINTIFF, DEFENDANT S. COMBS routinely engaged in and encouraged open illegal drug use while on the yacht.

95.     On several occasions, PLAINTIFF witnessed DEFENDANT S. COMBS smoking marijuana while receiving services from the Yachts crewmembers.  He would not allow them to leave as he smoked, and as a result, several crew members had a contact high.

96.     According to PLAINTIFF, in another incident, DEFENDANT S. COMBS had several women whom Plaintiff suspected of being sex workers on the yacht.  In one incident, a girl was extremely upset and ran to the lower deck, locked herself in the massage room, and was hysterically crying.  She said she did not feel safe and wanted to leave.  The crew was alerted of this. At this time, Sarah Chapman, one of S. COMBS' children's mother, was due to have a massage, so PLAINTIFF had to attempt to remove this young woman from the massage room, but she was very reluctant as she felt unsafe.  Eventually, she left.

97.     According to PLAINTIFF, on another occasion, DEFENDANT C. COMBS lost a large bag of marijuana and required the crew to search the yacht for it.

98.     According to PLAINTIFF, on another occasion, while Hulu was filming, DEFENDANT S. COMBS and his friends, including Yung Miami, were playing a game called "Careesha Please." DEFENDANT S. COMBS was dared to expose himself.  At that point, DEFENDANT S. COMBS stood up, pulled down his pants, and exposed his penis.  PLAINTIFF was standing beside the table and heard the commotion.  DEFENDANT S. COMBS' mother was sitting beside him.  Plaintiff then returned to the pantry and refused to stand by outside of the pantry for the duration of that service period.

99.     According to PLAINTIFF, on another occasion during New Year's Eve, DEFENDANT S. COMBS had guests who stayed until late afternoon the next day.  A fight broke out between Justin Combs' friends.  They physically assaulted each other and walked around the boat topless, screaming.  PLAINTIFF and the crew felt very uneasy in this environment. At one point, one of DEFENDANT S. COMBS' guests shoved Plaintiff's chief steward on the stairs and threw an object across the bar.

100.     According to PLAINTIFF, on another occasion, she witnessed an argument between a woman and a man. The man was upset and proceeded to physically assault her.

COMPLAINT FOR DAMAGES

101.    According to PLAINTIFF, DEFENDANT S. COMBS' assistant and noted drug mule, Brendan Paul, once came down to the pantry and was laughing uncontrollably. He told PLAINTIFF that he had to sit and watch DEFENDANT S. COMBS have sex with multiple women. He said DEFENDANT S. COMBS wanted him present just in case he needed him to get him something while he was in the middle of the act. PLAINTIFF questioned why Brendan would want to work for DEFENDANT S. COMBS if he was required to do such things, and Brendan replied that DEFENDANT S. COMBS was a good link to have in the industry.

102.    According to PLAINTIFF, when DEFENDANTS S. COMBS chartered the Yacht, she witnessed and served several "A-list" guests on board, including rappers (REDACTED 3)[3], (REDACTED 4)[4], (REDACTED 5)[5], and (REDACTED 6)[6], as well as (REDACTED 7)[7] and Cuba Gooding Jr.

103.    According to PLAINTIFF, Cuba Gooding Jr. was extremely unpleasant to serve. He sat at the bar and made derogatory comments to PLAINTIFF. He was visibly intoxicated, and she was in the room and witnessed him inappropriately touching Producer Rodney Jones, who at the time was working on The Love Album.

104.    As a result of the conduct of S. COMBS and C. COMBS, PLAINTIFF continues to suffer serious harm.

### **FIRST CAUSE OF ACTION**
### ASSAULT
### **(Against Defendant C. Combs)**

105.    The PLAINTIFF realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

106.    On or around December 28, 2022, DEFENDANT C. COMBS assaulted PLAINTIFF by violently grabbing her, groping her legs, breasts, anus, and vagina.

107.    He also tried to kiss her and proceeded to kiss her neck, face, and hands.

108.    Prior to the assault, DEFENDANT C. COMBS also forced PLAINTIFF to drink

---

[3] Philadelphia Rapper
[4] 30-year-old Atlanta rapper who rose to prominence following the release of his 2017 mixtapes
[5] 25-year-old British Rapper
[6] Moroccan Rapper signed to Bad Boy Records, and Maybach Music Group
[7] Former Model and CEO of Female Urban Clothing Brand

alcohol which she now believes was laced with drugs.

109.    DEFENDANT C. COMBS also exposed himself to PLAINTIFF, baring his naked, erect penis, trying to physically force PLAINTIFF to perform oral copulation.

110.    PLAINTIFF was seriously bruised as a result of the attack.

111.    Plaintiff did not consent to any of the sexual assault or misconduct and was drugged/intoxicated by DEFENDANT C. COMBS.

112.    Through the aforementioned acts, DEFENDANT C. COMBS caused harmful or offensive contact with an intimate part of PLAINTIFF's body as defined by California Civil Code § 1708.5.

113.    Through the aforementioned acts, DEFENDANT C. COMBS caused harmful or offensive contact between an intimate part of Defendant's body and PLAINTIFF's body as defined by California *Civil Code* § 1708.5.

114.    Through the aforementioned acts, DEFENDANT C. COMBS caused PLAINTIFF an imminent apprehension of harmful or offensive contact with an intimate part of Plaintiff's body, and sexually offensive contact with Plaintiff resulted.

115.    As a result of DEFENDANT C. COMBS' conduct, PLAINTIFF has suffered economic injury, all to PLAINTIFF's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

116.    As a result of DEFENDANT C. COMBS' above-described conduct, PLAINTIFF has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

117.    As described in this Complaint, DEFENDANT C. COMBS' conduct was done with oppression, fraud, and/or malice, warranting significant damages, including punitive damages.

## <u>SECOND CAUSE OF ACTION</u>
### BATTERY
### (Against Defendant C. Combs)

118.    The plaintiff realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

119.    On or around December 28, 2022, DEFENDANT C. COMBS sexually battered

PLAINTIFF by violently grabbing her, groping her legs, breasts, anus, and vagina.

120.    He also tried to kiss her and proceeded to kiss her neck, face, and hands.

121.    Prior to the assault, DEFENDANT C. COMBS also forced PLAINTIFF to drink alcohol, which she now believes was laced with drugs.

122.    DEFENDANT C. COMBS also exposed himself to PLAINTIFF, baring his naked, erect penis, trying to physically force PLAINTIFF to perform oral copulation.

123.    PLAINTIFF was seriously bruised as a result of the attack.

124.    Plaintiff did not consent to any of the sexual assault or misconduct and was drugged/intoxicated by DEFENDANT C. COMBS.

125.    Through the aforementioned acts, DEFENDANT C. COMBS caused harmful or offensive contact with an intimate part of PLAINTIFF's body as defined by California Civil Code § 1708.5.

126.    Through the aforementioned acts, DEFENDANT C. COMBS caused harmful or offensive contact between an intimate part of Defendant's body and PLAINTIFF's body as defined by California *Civil Code* § 1708.5.

127.    Through the aforementioned acts, DEFENDANT C. COMBS caused PLAINTIFF an imminent apprehension of harmful or offensive contact with an intimate part of Plaintiff's body, and sexually offensive contact with Plaintiff resulted.

128.    As a result of DEFENDANT C. COMBS' conduct, PLAINTIFF has suffered economic injury, all to PLAINTIFF's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

129.    As a result of DEFENDANT C. COMBS' above-described conduct, PLAINTIFF has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

130.    As described in this Complaint, DEFENDANT C. COMBS' conduct was done with oppression, fraud, and/or malice warranting significant damages, including punitive damages.

/ / /

/ / /

COMPLAINT FOR DAMAGES

### THIRD CAUSE OF ACTION
### SEXUAL ASSAULT
### (Against Defendant C. Combs)

131.    The PLAINTIFF realleges and incorporates by reference as though set forth fully at this point, each and every allegation contained herein.

132.    The plaintiff realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

133.    On or around December 28, 2022, DEFENDANT C. COMBS sexually battered PLAINTIFF by violently grabbing her, groping her legs, breasts, anus, and vagina.

134.    He also tried to kiss her and proceeded to kiss her neck, face, and hands.

135.    Prior to the assault, DEFENDANT C. COMBS also forced PLAINTIFF to drink alcohol which she now believes was laced with drugs.

136.    DEFENDANT C. COMBS also exposed himself to PLAINTIFF, baring his naked, erect penis, trying to physically force PLAINTIFF to perform oral copulation.

137.    PLAINTIFF was seriously bruised as a result of the attack.

138.    Plaintiff did not consent to any of the sexual assault or misconduct and was drugged/intoxicated by DEFENDANT C. COMBS.

139.    Through the aforementioned acts, DEFENDANT C. COMBS caused harmful or offensive contact with an intimate part of PLAINTIFF's body as defined by California Civil Code § 1708.5.

140.    Through the aforementioned acts, DEFENDANT C. COMBS caused harmful or offensive contact between an intimate part of Defendant's body and PLAINTIFF's body as defined by California *Civil Code* § 1708.5.

141.    Through the aforementioned acts, DEFENDANT C. COMBS caused PLAINTIFF an imminent apprehension of harmful or offensive contact with an intimate part of Plaintiff's body, and sexually offensive contact with Plaintiff resulted.

142.    As a result of DEFENDANT C. COMBS' conduct, PLAINTIFF has suffered economic injury, all to PLAINTIFF's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

143.    As a result of DEFENDANT C. COMBS' above-described conduct, PLAINTIFF

has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

144.     As described in this Complaint, DEFENDANT C. COMBS' conduct was done with oppression, fraud, and/or malice warranting significant damages, including punitive damages.

### FOURTH CAUSE OF ACTION
### PREMISES LIABILITY
### (Against Defendant S. Combs)

145.     The PLAINTIFF realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

146.     DEFENDANT S. COMBS leased, occupied and/or controlled the yacht on which PLAINTIFF was sexually assaulted and battered on the date and time PLAINTIFF was sexually assaulted and battered.

147.     DEFENDANT S. COMBS had control over the staff and the happenings aboard the yacht.

148.     DEFENDANT S. COMBS completely controlled the premises of the yacht, allowing who he wanted on, throwing parties, having sex workers come to service his guests, allowing fights to occur, and nonstop illegal drug use and alcohol use.

149.     DEFENDANT S. COMBS had a valid lease giving him control of the yacht for the entire holiday season and occupied the yacht in order to throw lawless parties and allow illegal activities to occur.

150.     Over the 2022 holiday season, DEFENDANT S. COMBS used the yacht that he leased and had control over as a location for mayhem, including illegal prostitution, drug use, and reckless partying.

151.     DEFENDANT S. COMBS was negligent in the use or maintenance of the yacht.

152.     DEFENDANT S. COMBS allowed and encouraged the people aboard his yacht, including his son C. COMBS to engage in the drugs and reckless behavior while aboard the yacht.

153.     PLAINTIFF was sexually assaulted and battered by DEFENDANT S. COMBS' son, C. COMBS when he forced her to drink a likely laced drink, violently grabbed her, groped her, exposed his erect penis to her, and tried to force her to perform oral copulation on him all

while on the premises of the yacht in question.

154. DEFENDANT C. COMBS also tried to kiss her and proceeded to kiss her neck, face, and hands.

155. PLAINTIFF was severely mentally, emotionally, and physically harmed while on the yacht.

156. DEFENDANT S. COMBS' negligence was a substantial factor in causing PLAINTIFF's harm because of failing to properly use and secure the yacht and for fostering an environment for drug use and assault to occur without ramifications.

157. Through the aforementioned acts, DEFENDANT S. COMBS caused Plaintiff an imminent apprehension of harmful or offensive contact with an intimate part of PLAINTIFF's body, and sexually offensive contact with PLAINTIFF resulted.

158. As a result of DEFENDANT S. COMBS' conduct, PLAINTIFF has suffered economic injury, all to PLAINTIFF's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

159. As a result of DEFENDANT S. COMBS' above-described conduct, PLAINTIFF has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

160. As described in this Complaint, the DEFENDANT S. COMBS' conduct was done with oppression, fraud, and/or malice warranting significant damages, including punitive damages.

## FIFTH CAUSE OF ACTION
### AIDING AND ABETTING
### (Against Defendant S. Combs)

161. The PLAINTIFF realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

162. DEFENDANT S. COMBS knew that an assault/battery/sexually assault was being committed and was and going to be committed against PLAINTIFF because he encouraged and fostered an environment and culture to his son and his employees to do whatever they want with PLAINTIFF and the other yacht staff.

163. S. COMBS provided drugs and alcohol to be used to take advantage of many

women on the yacht, including PLAINTIFF.

164.    S. COMBS knew PLAINTIFF had been assaulted because he "paid off" the yacht Captain after hearing of PLAINTIFF's complaint relating to his son DEFENDANT C. COMBS' assault/battery/sexual assault against PLAINTIFF.

165.    DEFENDANT S. COMBS' conduct was a substantial factor in causing harm to PLAINTIFF's harm.

166.    Through the aforementioned acts, DEFENDANT S. COMBS caused PLAINTIFF an imminent apprehension of harmful or offensive contact with an intimate part of PLAINTIFF's body, and sexually offensive contact with PLAINTIFF resulted.

167.    As a result of DEFENDANT S. COMBS' conduct, PLAINTIFF has suffered economic injury, all to PLAINTIFF's general, special, and consequential damage in an amount to be proven at trial, but in no event is less than the minimum jurisdictional amount of this Court.

168.    As a result of DEFENDANT S. COMBS' above-described conduct, PLAINTIFF has suffered and continues to suffer great emotional distress and was prevented and will continue to be prevented from performing daily activities and obtaining the full enjoyment of life.

169.    As described in this Complaint, the DEFENDANT S. COMBS' conduct was done with oppression, fraud, and/or malice warranting significant damages, including punitive damages.

## SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
#### (Against Defendant C. Combs)

170.    The PLAINTIFF realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

171.    On or around December 28, 2022, DEFENDANT C. COMBS assaulted PLAINTIFF by violently grabbing her, groping her legs, breasts, anus, and vagina.

172.    Prior to the assault, DEFENDANT C. COMBS also forced PLAINTIFF to drink alcohol which she now believes was laced with drugs.

173.    DEFENDANT C. COMBS also exposed himself to PLAINTIFF, baring his naked, erect penis, trying to physically force PLAINTIFF to perform oral copulation.

174.    He also tried to kiss her and proceeded to kiss her neck, face, and hands.

COMPLAINT FOR DAMAGES

175.     PLAINTIFF was seriously bruised as a result of the attack.

176.     Defendants' extreme and outrageous conduct alleged in this Complaint, including but not limited to assault, sexual assault, and battery upon Plaintiff, were done in wanton and reckless disregard of such consequences to Plaintiff.

177.     PLAINTIFF now experienced seizures and has to constantly be helped by others for tasks that she could previously do independently.

178.     PLAINTIFF has also been unable to secure another job in the industry she knows and loves, the yachting industry, since she was wrongfully terminated from her position with the Fraser.

179.     PLAINTIFF's relationship with her significant other prematurely ended because her significant other could not bear to deal with the physical and emotional ramifications of the assault by C. COMBS.

180.     DEFENDANT C. COMBS' actions were extreme and outrageous.

181.     As a direct and proximate result of said extreme and outrageous conduct by DEFENDANT C. COMBS, PLAINTIFF did suffer humiliation, mental anguish, and emotional and physical distress and has been hurt and injured in her health, strength, and activity, sustaining an injury to her nervous system and person, all of which have caused, continue to cause and will continue to cause Plaintiff great mental, physical and nervous pain and suffering.

182.     As a result of such severe emotional distress, PLAINTIFF has been generally, specially, and consequentially damaged in an amount to be established according to evidence.

183.     DEFENDANT C. COMBS committed the aforementioned infliction of emotional distress willfully and intentionally and by means of oppression, fraud, and malice and in conscious disregard of PLAINTIFF's rights. Therefore, PLAINTIFF is entitled to an award of exemplary or punitive damages in an amount to be established at trial to meaningfully punish DEFENDANT C. COMBS, thereby deterring similar conduct in the future.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant C. Combs)**

184.     The plaintiff realleges and incorporates by reference, as though set forth fully at

COMPLAINT FOR DAMAGES

this point, each and every allegation contained herein.

185.    The plaintiff realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

186.    On or around December 28, 2022, DEFENDANT C. COMBS assaulted PLAINTIFF by violently grabbing her, groping her legs, breasts, anus, and vagina.

187.    Prior to the assault, DEFENDANT C. COMBS also forced PLAINTIFF to drink alcohol which she now believes was laced with drugs.

188.    DEFENDANT C. COMBS also exposed himself to PLAINTIFF, baring his naked, erect penis, trying to physically force PLAINTIFF to perform oral copulation.

189.    He also tried to kiss her and proceeded to kiss her neck, face, and hands.

190.    PLAINTIFF was seriously bruised as a result of the attack.

191.    Defendant's extreme and outrageous conduct alleged in this Complaint, including but not limited to assault, sexual assault, and battery, were negligent.

192.    PLAINTIFF now experienced seizures and has to constantly be helped by others for tasks that she could previously do independently.

193.    PLAINTIFF has also been unable to secure another job in the industry she knows and loves, the yachting industry, since she was wrongfully terminated from her position with the Fraser.

194.    PLAINTIFF was also abandoned by her significant other who could not bear to deal with the physical and emotional ramifications of the assault by DEFENDANT C. COMBS.

195.    As a direct and proximate result of said extreme and outrageous conduct by DEFENDANT C. COMBS, PLAINTIFF did suffer serious emotional distress including humiliation, mental anguish, and emotional and physical distress and has been hurt and injured in her health, strength, and activity, sustaining an injury to her nervous system and person, all of which have caused, continue to cause and will continue to cause PLAINTIFF great mental, physical and nervous pain and suffering.

196.    As a result of such severe emotional distress, PLAINTIFF has been generally, specially, and consequentially damaged in an amount to be established according to evidence.

197.    DEFENDANT C. COMBS committed the aforementioned infliction of emotional

COMPLAINT FOR DAMAGES

distress willfully and intentionally and by means of oppression, fraud, and malice and in conscious disregard of PLAINTIFF's rights. Therefore, PLAINTIFF is entitled to an award of exemplary or punitive damages in an amount to be established at trial to meaningfully punish DEFENDANT C. COMBS, thereby deterring similar conduct in the future.

### PRAYER

WHEREFORE, PLAINTIFF GRACE O'MARCAIGH prays for judgment against all DEFENDANTS, jointly and severally, as follows:

1.     For compensatory, special, and general damages according to proof;

2.     For punitive and exemplary damages;

3.     For costs of suit, pre-judgment, and post-judgment interest; and

4.     Such other and further relief as the Court may deem necessary or appropriate

Dated: April 4, 2024                    **IVIE McNEILL WYATT PURCELL & DIGGS**

                                        By: _Rodney S. Diggs_
                                        **RODNEY S. DIGGS, ESQ.**
                                        Attorneys for Plaintiff,
                                        **GRACE O'MARCAIGH**

27

COMPLAINT FOR DAMAGES

1

## **DEMAND FOR JURY TRIAL**

2

3

Plaintiff GRACE O'MARCAIGH hereby demands a jury trial.

4

Dated: April 4, 2024                    **IVIE McNEILL WYATT PURCELL & DIGGS**

5

6                                       **By:** _Rodney S. Diggs_

                                        **RODNEY S. DIGGS, ESQ.**

7                                       Attorneys for Plaintiff,

                                        **GRACE O'MARCAIGH**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DAMAGES

**PRESERVATION NOTICE**

The term "you," "your," or "yours" as used herein shall refer to you (the recipient of this letter), as well as to the respondents and any individuals responsible for the custody and control of the below information, including, but not limited to, those individuals' administrative assistants, secretaries, agents, employees, information technology personnel and third-party vendors. From this point forward, you are directed to prevent "spoliation," defined as altering, changing, updating, destroying (even if periodically), editing, or deleting any information set forth hereafter.

If you cause any such alteration, destruction, or change, direct it, or allow it to occur, you may be charged with discovery rule violations for which sanctions may be imposed. Further, your failure to abide by this request could result in severe penalties against you and form the basis of legal claims for spoliation.

Electronically Stored Information:

In terms of electronically stored information, you are directed to prevent any destructive, alternative or other change to any web pages, virtual profiles or identical (including, but not limited to, Facebook, Instagram, Pinterest, Twitter, Tumblr, LinkedIn, Snapchat, Google Plus+, Flickr, Vine, About.me, ask.fm etc., or any other social media-based web profile or networking site account), emails, voice messages, text messages, instant messages or messaging systems, recordings, digital recordings, media images and videos, temporary memory, memory sticks, portable memory devices, laptops or computers, CDs, DVDs, USB devices, databases, computer activity logs, internet browsing history (including cookies), network access and server activity logs, word processing files and file fragments, backup and archival files, imaging and facsimile files, electronic calendar and scheduling program files and file fragments as well as any other contact and relationship management data (e.g., Outlook), electronic spreadsheet files and file fragments, pertaining in any way to this controversy of the parties or any potential witnesses. This includes a request that such information not be modified, altered, or deleted due to data compression or disk fragmentation (or other optimization procedures), which processes you are hereby directed to suspend until that data can be preserved, copied, and produced.

29

COMPLAINT FOR DAMAGES

You are directed not to modify, alter, or delete or allow modifications, alterations, or deletions to be made to any electronically stored information. You are further directed to preserve all, and not to destroy any, passwords, decryption productions (including, if necessary, the software to decrypt the files), network access codes, manuals, tutorials, written instructions, decompression or reconstruction software, and any other information and things necessary to access, view and (if necessary) reconstruct the electronic data we will request through discovery.

Paper Information:

Regarding the paper information, you are directed to preserve any emails, videos, texts, memos, reports, documents, notes, correspondence, photographs, investigative information, or other documents about the controversy, parties, or witnesses. We expect to obtain several documents and other data from you through discovery, including text messages, emails, photographs, and other information stored on computers, electronic devices, and telephones.

Although we may bring a motion with a court for order-preserving documents and other data from destruction or alteration, your obligation to preserve documents and other data for discovery, in this case, arises independently from any order on such motion. Electronic documents and the storage media, including but not limited to telephones on which they reside, contain relevant, discoverable information beyond what may be found in printed documents. Therefore, even where a paper copy exists, we will likely seek all documents in their original, electronic form, along with metadata or information about those documents on the media. We will seek paper printouts of only those documents that contain unique information created after they were printed (e.g., paper documents containing handwriting, signatures, marginalia, drawings, annotations, highlighting, and redactions) and any paper documents for which no corresponding electronic files exist.

The laws and rules prohibiting the destruction of evidence apply to electronically stored information in the same manner they apply to other evidence. Due to its format, electronic information is quickly deleted, modified, or corrupted. Accordingly, the demand is made that you take every reasonable step to preserve this information until the final resolution of this matter.

COMPLAINT FOR DAMAGES

This may include, but would not be limited to, an obligation to discontinue all data destruction and backup tape recycling policies.

Concerning electronic data created after this Complaint's delivery date, relevant evidence should not be destroyed. You must take the steps necessary to avoid the destruction of such evidence.

Dated: April 4, 2024                              **IVIE McNEILL WYATT PURCELL & DIGGS**

**By:** _Rodney S. Diggs_

**RODNEY S. DIGGS ESQ.**
Attorneys for Plaintiff,
**GRACE O'MARCAIGH**

COMPLAINT FOR DAMAGES