**RODNEY S. DIGGS (SBN 274459)**
rdiggs@imwlaw.com
**TYRINE S. AMAN (PL 504978)**
taman@imlwaw.com
**IVIE McNEILL WYATT PURCELL & DIGGS**
**A Professional Law Corporation**
444 South Flower Street, Suite 3200
Los Angeles, California 90071
Telephone:   (213) 489-0028
Facsimile:   (213) 489-0552

**TYRONE A. BLACKBURN, ESQ.**
tblackburn@tablackburnlaw.com
**T. A. Blackburn Law, PLLC**
1242 E. 80th St 3rd Floor
Brooklyn, NY 11236
Telephone: (347) 427-5999

Attorneys for Plaintiff, **GRACE O'MARCAIGH**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GRACE O'MARCAIGH, an individual, | CASE NO.: 2:25-cv-03650-DMG-MAA |
| Plaintiff, | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| vs. | 1. **ASSAULT** *(In the Alternative: Maritime Battery)* |
| | 2. **BATTERY** *(In the Alternative: Maritime Battery)* |
| CHRISTIAN COMBS, an individual, SEAN COMBS, an individual, and JOHN DOE 1-10, JANE DOE 1-10 and ABC CORPORATIONS 1-10, | 3. **SEXUAL BATTERY** *(In the Alternative: Maritime Battery)* |
| | 4. **PREMISES LIABILITY** *(In the Alternative: Maritime Negligence)* |
| Defendants. | 5. **AIDING AND ABETTING** *(In the Alternative: Maritime Joint Tortfeasor Liability)* |

1

|  | )  **6. INTENTIONAL INFLICTION**<br>**OF EMOTIONAL DISTRESS**<br>*(In the Alternative: Maritime*<br>*Intentional Infliction of Emotional*<br>*Distress)*<br>**7. NEGLIGENT INFLICTION OF**<br>**EMOTIONAL DISTRESS**<br>*(In the Alternative: Maritime*<br>*Negligence)*<br><br>**DEMAND FOR JURY TRIAL** |
|---|---|

Plaintiff GRACE O'MARCAIGH ("PLAINTIFF"), by and through her attorney of record, allege as follows:

## PARTIES

1. Plaintiff GRACE O'MARCAIGH (hereinafter "PLAINTIFF") is a citizen of the Republic of Ireland who has worked as a professional yacht stewardess since 2018.

2. Defendant Christian Combs ("DEFENDANT C. COMBS") is an individual and a citizen of California domiciled in Beverly Hills, Los Angeles County. DEFENDANT C. COMBS is an aspiring rapper and model. He is the 28-year-old son of Defendant Sean Combs.

3. Defendant Sean Combs ("DEFENDANT S. COMBS") is an individual, rapper, and record executive, and is the father of DEFENDANT C. COMBS. DEFENDANT S. COMBS is the Chief Executive Officer of Janice Combs Music Holdings, Inc. ("JCMUS, Inc."), a California corporation with its principal office located at 9255 Sunset Boulevard, 2nd Floor, West Hollywood, California, as reflected in Statements of Information filed with the California Secretary of State in December 2023 and November 2024. DEFENDANT S. COMBS is also the sole Manager of 450 Alton, LLC, whose Annual Reports filed with the Florida Secretary of State from 2022 through 2025 list that same West Hollywood address as its

principal place of business. JCMUS, Inc., acting as DEFENDANT S. COMBS' agent and at his direction, chartered the Victorious for the December 2022 holiday period during which the incidents giving rise to this action occurred. On October 3, 2025, DEFENDANT S. COMBS was convicted of two counts of transportation for prostitution in violation of the Mann Act and sentenced to 50 months in federal prison, a $500,000 fine, and five years of supervised release. DEFENDANT S. COMBS is currently incarcerated at the Federal Detention Center in Brooklyn, New York.

4. Defendants John and Jane Does 1-10 are individuals whose identities are currently unknown to PLAINTIFF, who are believed to have participated in, aided, and/or abetted the conduct alleged herein and/or acted within the scope of their employment with one or more named Defendants. PLAINTIFF reserves the right to amend this pleading to add these individuals upon discovery of their identities.

5. Defendants ABC Corps. 1-10 are entities whose identities are currently unknown to PLAINTIFF, who are believed to have participated in, aided, or abetted the conduct alleged herein. PLAINTIFF reserves the right to amend this pleading to identify these entities upon discovery of their identities.

## JURISDICTION

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2), which confers original jurisdiction over civil actions between citizens of different states and citizens or subjects of a foreign state where the amount in controversy exceeds $75,000, exclusive of interest and costs. DEFENDANT C. COMBS is a citizen of California. DEFENDANT S. COMBS is a citizen of Florida. PLAINTIFF Grace O'Marcaigh is a citizen of the Republic of Ireland. The amount in controversy substantially exceeds $75,000.

7. PLAINTIFF does not concede that this action falls within this Court's admiralty jurisdiction under 28 U.S.C. § 1333. Federal admiralty jurisdiction over a tort claim requires satisfaction of both a locality test and a connection test. The connection test requires, first, that the incident have a potentially disruptive impact

3

on maritime commerce, and second, that the activity giving rise to the incident have a substantial relationship to traditional maritime activity. The incidents giving rise to this action — the drugging and sexual assault of a crew member by a recreational charter guest during a private holiday charter — are purely personal criminal acts bearing no relationship to maritime commerce, navigation, or any traditional maritime activity. The alleged conduct constitutes intentional criminal acts wholly unrelated to navigation, vessel operation, or maritime commerce, and therefore does not bear a substantial relationship to traditional maritime activity as required for admiralty jurisdiction. The incident occurred during a private recreational charter unrelated to navigation or maritime operations; neither Defendant was engaged in any commercial maritime activity at the time. A sexual assault committed by a recreational guest aboard a private holiday charter does not satisfy the maritime nexus test and does not invoke the Court's admiralty jurisdiction. Subject matter jurisdiction over this action rests on diversity of citizenship under 28 U.S.C. § 1332. To the extent any prior stipulation, agreement, statement, or acknowledgment by or on behalf of PLAINTIFF could be construed as a concession that admiralty jurisdiction exists under 28 U.S.C. § 1333, any such concession was inadvertent and unintentional, did not reflect a considered position on the maritime nexus question, and is hereby expressly withdrawn. As subject matter jurisdiction cannot be conferred by agreement of the parties, PLAINTIFF respectfully submits that the Court's independent assessment of the maritime nexus is warranted and that jurisdiction properly rests on diversity of citizenship.

8. PLAINTIFF brings this action under California law and expressly preserves her right to trial by jury. PLAINTIFF does not designate this action as an admiralty or maritime claim under Federal Rule of Civil Procedure 9(h), and does not invoke the Court's admiralty jurisdiction. To the extent this Court nonetheless determines that admiralty jurisdiction exists under 28 U.S.C. § 1333, PLAINTIFF invokes the saving to suitors clause, which preserves her right to pursue state law remedies and her right to trial by jury notwithstanding. In that event, PLAINTIFF's causes of

action are asserted under California law as the primary basis for relief, with general maritime law pleaded in the alternative as set forth in each cause of action below.

9. This Court has personal jurisdiction over DEFENDANT C. COMBS. DEFENDANT C. COMBS is domiciled in California and is a citizen of California, as conceded by Defendants in their Notice of Removal establishing general jurisdiction over him in this District.

10. This Court has specific personal jurisdiction over DEFENDANT S. COMBS. DEFENDANT S. COMBS is the Chief Executive Officer of JCMUS, Inc., a California corporation with its principal office at 9255 Sunset Boulevard, West Hollywood, California, as reflected in Statements of Information filed with the California Secretary of State in December 2023 and November 2024. DEFENDANT S. COMBS is also the sole Manager of 450 Alton, LLC, whose Annual Reports filed with the Florida Secretary of State from 2022 through 2025 list that same West Hollywood address as its current principal place of business. These are not passive business registrations; they reflect ongoing, active business operations that DEFENDANT S. COMBS directs from California.

11. The charter of the Victorious was arranged, authorized, and executed from California, by California-based actors, in the exercise of DEFENDANT S. COMBS' California-based authority. Upon information and belief, Tarik Brooks, who served as President of Combs Enterprises and oversaw all business operations and investments owned by DEFENDANT S. COMBS, executed the MYBA Charter Agreement on behalf of JCMUS, Inc. from its West Hollywood office. DEFENDANT S. COMBS did not merely maintain passive contacts with California — he actively used a California-based business entity and California-based personnel to negotiate, authorize, and execute the charter agreement at issue. By executing that agreement, JCMUS, Inc., acting as DEFENDANT S. COMBS' agent, at his direction, and within the scope of that role, entered into a binding contract that placed PLAINTIFF aboard the Victorious, placed DEFENDANT S. COMBS in exclusive control of the vessel and its environment, and set in motion every event

giving rise to this action. DEFENDANT S. COMBS thus purposefully availed himself of the privileges of conducting activities in California: he used his California-based corporation, managed by California-based officers, to enter a contract that gave him exclusive control over the vessel, the guests, and the crew — including PLAINTIFF.

12. PLAINTIFF's claims arise directly out of and relate to that California-based activity. This is not a case in which California contacts are attenuated or incidental to the claims. The premises liability claim against DEFENDANT S. COMBS is that he exercised his contractual control over the Victorious to foster a dangerous environment that foreseeably led to PLAINTIFF's assault. That contractual control was created by and flows entirely from the charter agreement his California-based agent executed from West Hollywood. The aiding and abetting claim is that DEFENDANT S. COMBS substantially assisted the assault through the dangerous environment he maintained aboard the vessel and then suppressed any response. The authority to maintain that environment — and to ensure no accountability — derived from the same California-executed transaction. But for DEFENDANT S. COMBS' execution of the charter agreement through his California-based entity, PLAINTIFF would not have been placed aboard the Victorious and exposed to the conditions and conduct giving rise to her claims. There is thus a direct causal chain from DEFENDANT S. COMBS' California-based forum activity — the execution of the charter agreement through JCMUS, Inc. — to the precise conduct alleged in each cause of action asserted against him.

13. DEFENDANT S. COMBS' California-based conduct was also expressly aimed at producing consequences foreseeably harmful to PLAINTIFF in connection with her work aboard the vessel. By directing JCMUS, Inc. to charter the Victorious from West Hollywood, DEFENDANT S. COMBS knowingly created the specific conditions under which PLAINTIFF would be required to serve him and his guests — conditions that included the environment he fostered and the assault his son committed. The harm to PLAINTIFF was the foreseeable result of a transaction

deliberately executed through California-based business operations. DEFENDANT S. COMBS thus purposefully directed his forum activities toward the specific chain of events giving rise to this action. The exercise of jurisdiction is reasonable and consistent with traditional notions of fair play and substantial justice.

14. Taken together, the overlapping California-based business operations of JCMUS, Inc. and 450 Alton, LLC — each utilizing the same West Hollywood, California address as its principal place of business under DEFENDANT S. COMBS' direction and authority — demonstrate that DEFENDANT S. COMBS deliberately used California as the operational base from which he executed the transaction that directly gave rise to PLAINTIFF's claims. DEFENDANT S. COMBS' purposeful use of California-based entities and personnel to charter the Victorious is the specific forum-related activity from which each of PLAINTIFF's claims arises.

## FACTS COMMON TO ALL CAUSES OF ACTION

15. Beginning in or around July 2022, PLAINTIFF worked as a Second Stewardess aboard Victorious, an 85-meter superyacht owned by September Yachting Limited and operated through Fraser Worldwide SAM. PLAINTIFF was employed by the crewing company Equiom FW049 IC.

16. After one month in a temporary capacity, PLAINTIFF was offered a permanent position. In or about September 2022, PLAINTIFF participated in charter sales efforts for the Victorious at the Monaco Boat Show, where potential clients like Defendants were solicited.

17. In December 2022, PLAINTIFF and the crew were advised that Victorious had been chartered for the 2022 holiday period. The charter was executed pursuant to a MYBA Charter Agreement dated November 17, 2022, between September Yachting Limited and JCMUS, Inc., for the period of December 20, 2022, through January 3, 2023. PLAINTIFF changed her personal holiday family plans to accommodate the charter service and flew to St. Martin to prepare the yacht for service.

18. PLAINTIFF learned that DEFENDANT S. COMBS was the Principal Charter guest. DEFENDANT S. COMBS exercised full control over the staff, guests, and premises of the yacht for the duration of the charter.

19. PLAINTIFF was assigned the 6:00 p.m. to 6:00 a.m. overnight shift together with one other crew member, responsible for dinner and drink service throughout the twelve-hour period with minimal staff support.

20. DEFENDANT S. COMBS typically remained aboard the yacht throughout the charter. DEFENDANT C. COMBS and his brother Justin Combs stayed in a villa nearby and joined their father aboard most evenings.

21. During the second week of the charter, the nature of the charter changed significantly. A constant rotation of guests — including individuals whose conduct was consistent with commercial sexual services — joined the charter alongside celebrity guests. DEFENDANT S. COMBS fostered an environment of open drug and alcohol use, with guests remaining onboard throughout the night and demanding service until 6:00 a.m. Staff were treated with disrespect, and it became difficult to distinguish which bottles of alcohol had been tampered with. PLAINTIFF observed that various women on the yacht became severely incapacitated after only one drink or shot, leading her to reasonably believe that alcohol was being laced with drugs.

22. Rodney Jones ("Mr. Jones") was also aboard the yacht, employed to work on a recording project for DEFENDANT S. COMBS. Mr. Jones spent time with PLAINTIFF at the service bar. In addition, at the direction of DEFENDANT S. COMBS, Mr. Jones recorded several sessions and interactions on the yacht, including the assault of PLAINTIFF described herein.

23. In the early morning hours of December 28, 2022, at about 5:00 a.m., PLAINTIFF received a message on the on-duty phone that DEFENDANT C. COMBS would be arriving by tender to record in the yacht's makeshift recording studio with Mr. Jones.

24. DEFENDANT C. COMBS arrived visibly and heavily intoxicated from what PLAINTIFF suspected was a combination of narcotics and alcohol. Upon

entering the recording studio, DEFENDANT C. COMBS immediately ordered tequila shots from a bottle he may have brought onboard.

25. DEFENDANT C. COMBS insisted that PLAINTIFF take a shot. PLAINTIFF initially declined but, under pressure and wanting to remain professional — and in light of a pattern previously established by the Captain and DEFENDANT S. COMBS of demanding crew take shots with guests, including in a filmed "Black Santa Video" — PLAINTIFF obliged with one shot while Mr. Jones was present.

26. The following interaction was captured on audio recording wherein DEFENDANT C. COMBS pressures and forces PLAINTIFF to consume additional shots of tequila.

*Audio 1*

**DEFENDANT C. COMBS**: Yo, it's shot o'clock.

**PLAINTIFF**: No, I'm not doing shots. Christian?

**DEFENDANT C. COMBS**: Everybody, we got to take a shot.

*Audio 2*

**PLAINTIFF**: I'll just put the ledge.

**DEFENDANT C. COMBS**: No, no, no. Take the whole thing.

**PLAINTIFF**: No, you will take it as well.

**DEFENDANT C. COMBS**: Take the whole shot.

**PLAINTIFF**: I'm only doing it as long as you take it as well.

**DEFENDANT C. COMBS**: I ain't going to lie, I'm not taking nothing. Please, please, take the shot.

**PLAINTIFF**: You are drugging me?

**DEFENDANT C. COMBS**: Take the shot. Hey, yo, play another beat one time because now--

27. After forcing PLAINTIFF to take a shot, DEFENDANT C. COMBS insisted she remain seated beside him and stop attempting to return to the pantry. In doing so, DEFENDANT C. COMBS violently grabbed her arm and physically

9

prevented her from getting up. He forced her to take another shot. PLAINTIFF began to feel ill effects and suspected the tequila had been spiked. The following audio recording captures the sexual assault that followed:

**PLAINTIFF**: This is not an offer.

**DEFENDANT C. COMBS**: You said what?

**PLAINTIFF**: I can't. I'm swapping out. I can't do it. I'm sorry, darling.

**DEFENDANT C. COMBS**: Nah, we need you.

**PLAINTIFF**: I'm going to stop. Stop. I have to go. I have to go. Honestly, I'm like already losing sleep. I have to go now.

**DEFENDANT C. COMBS**: You're the best one on this ship, though.

**PLAINTIFF**: What do you mean?

**DEFENDANT C. COMBS**: Who's going to replace you?

**PLAINTIFF**: Who's going to replace me?

**DEFENDANT C. COMBS**: Fuck that. That's going to be trash, though. You feel me?

**PLAINTIFF**: Excuse me, you don't touch my legs like that. I'll move my legs where I want to.

**PLAINTIFF**: If I want to do this, then I will. You don't touch my legs like that.

**DEFENDANT C. COMBS**: Listen, you and everybody in the crew, it's great.

**PLAINTIFF**: I can't. I have to go down. I have to go down.

**DEFENDANT C. COMBS**: No. Yo, tell me, listen.

**PLAINTIFF**: What?

**DEFENDANT C. COMBS**: Like say you're just vibing with me the whole time.

**PLAINTIFF**: I can't. I promise you, I wish I could, but I can't. Unless I say that you guys requested me.

**DEFENDANT C. COMBS**: Yes, who can I talk to right now? Who can I

10

talk to? I'm going to say I requested you right now.

**PLAINTIFF**: Well, you can take your hand off my ass for the first thing.

28. During this encounter, DEFENDANT C. COMBS touched PLAINTIFF's legs, breasts, anus, and vagina and attempted to kiss her, proceeding to kiss her neck, face, and hands. PLAINTIFF did not consent. The timeline thereafter is very blurry to PLAINTIFF due to the effects of the suspected spiked tequila. PLAINTIFF tried to buy time by telling DEFENDANT C. COMBS she could only stay if he formally requested her through the crew, knowing that any supervisor who could approve such a request was asleep, so he would be unable to do so, and she could leave.

29. After the assault in the recording studio, PLAINTIFF attempted to resume her duties. She made her way to the pantry, where her relief colleague found her visibly intoxicated and in shock.

30. Shortly after, DEFENDANT C. COMBS sought out PLAINTIFF and demanded she find him a place to sleep on the yacht. With no spare cabins available and DEFENDANT C. COMBS refusing to return to shore, PLAINTIFF directed him to the cinema, which was commonly used as overflow sleeping quarters.

31. Upon entering the cinema, DEFENDANT C. COMBS blocked the only exit. He cornered PLAINTIFF, became extremely aggressive and groped her. PLAINTIFF pushed him back repeatedly. DEFENDANT C. COMBS then removed all of his clothes, with an erect penis, and grabbing PLAINTIFF's arms attempted to force her to perform oral copulation on him. PLAINTIFF fought back. Her partner aboard the vessel, concerned she had not returned from her shift, entered the cinema looking for her, which startled DEFENDANT C. COMBS and allowed PLAINTIFF to escape.

32. PLAINTIFF was twenty-five years old at the time of the attack.

33. The morning after, PLAINTIFF reported what had occurred to the yacht's captain, Captain Petar Milkov. Captain Milkov responded without compassion or concern, failed to investigate, and insisted that PLAINTIFF was probably voluntarily partying with the guests. She was not. Captain Milkov then assigned PLAINTIFF to

work in front-of-house service for the remainder of the charter, requiring her to personally serve DEFENDANT C. COMBS with no option to avoid contact with him.

34. Upon information and belief, DEFENDANT S. COMBS' employees, including Brendan Paul, Chief of Staff Kristina Khorram, and Frankie Santella, learned of the assault and informed DEFENDANT S. COMBS. Shortly after, Captain Milkov received a generous gratuity from DEFENDANT S. COMBS to dissuade him from protecting PLAINTIFF or taking action on her behalf. Only select crew members were asked to write statements; PLAINTIFF and her partner were the only two staff members not interviewed and not asked to write a statement.

**Defendant S. Combs' Control Over The Charter Environment**

35. DEFENDANT S. COMBS chartered the Victorious through JCMUS, Inc. and exercised full control over the guests, staff, and environment aboard the yacht throughout the charter period. He intentionally fostered an environment that normalized drug use, intoxication, and the degradation of those present — including crew members — and by doing so gave license to DEFENDANT C. COMBS and his guests to engage in unlawful conduct without consequence.

36. On multiple occasions, DEFENDANT S. COMBS openly smoked marijuana while crew members were present, preventing them from leaving, resulting in several crew members sustaining a contact high. He routinely permitted individuals aboard the vessel whose conduct PLAINTIFF reasonably believed to be consistent with commercial sexual services; such individuals stayed in cabins with guests for short periods and departed. On one occasion, a young woman ran to the lower deck, locked herself in the massage room, and told crew she did not feel safe and wanted to leave.

37. DEFENDANT S. COMBS' deliberate awareness of his conduct and its consequences is demonstrated by the following: on one occasion, DEFENDANT S. COMBS was visibly intoxicated and his Chief of Staff Kristina Khorram instructed PLAINTIFF to stock the bar with DeLeon Tequila and Ciroc Vodka. Shortly after,

Khorram abruptly ordered PLAINTIFF to remove all bottles because specific visitors were boarding. DEFENDANT S. COMBS left the room, the visitors entered, and DEFENDANT S. COMBS returned within less than an hour sober and holding his newborn daughter. This demonstrated that DEFENDANT S. COMBS was fully aware of his conduct, capable of modifying it on demand, and chose to maintain an unsafe environment at all other times.

38. On New Year's Eve, a fight broke out among Justin Combs' guests aboard the yacht. Guests physically assaulted each other, walked around the boat shirtless and screaming, and one guest shoved PLAINTIFF's chief steward on the stairs and threw an object across the bar. On another occasion, PLAINTIFF witnessed a man physically assault a woman aboard the yacht. DEFENDANT S. COMBS took no steps to protect crew or address the dangerous environment he had created.

39. DEFENDANT S. COMBS' assistant, Brendan Paul, told PLAINTIFF that he had been required to remain present while DEFENDANT S. COMBS engaged in sexual acts with multiple women simultaneously, on standby in case DEFENDANT S. COMBS needed something during the act.

**Damages**

40. As a direct and proximate result of DEFENDANT C. COMBS' assault and the subsequent coverup orchestrated by DEFENDANT S. COMBS and his staff, PLAINTIFF was isolated and retaliated against aboard the Victorious for the remainder of the charter. On or about May 10, 2023, PLAINTIFF was terminated by Captain Milkov. PLAINTIFF and her partner, who had witnessed her physical injuries and been unable to cope with the emotional aftermath, subsequently separated.

41. PLAINTIFF's mental health deteriorated severely following the assault. She required medication and intensive therapy, fell into a deep depression, and was unable to fulfill her maid of honor duties at her only sister's wedding in June 2023 — an occasion she had anticipated for over eighteen months. PLAINTIFF developed severe anxiety, panic attacks, an eating disorder, and experienced severe suicidal

ideations on multiple occasions.

42. PLAINTIFF's physical health also deteriorated as a result of the assault. She suffered multiple epileptic seizures, which rendered her unable to perform basic activities — including swimming and bathing — without supervision.

43. PLAINTIFF has been unable to secure another permanent position in the yachting industry as a result of the assault and its aftermath, ending a career she had built since 2018 and intended to pursue for the remainder of her working life. PLAINTIFF continues to suffer professional, financial, and personal harm as a result of Defendants' conduct.

**FIRST CAUSE OF ACTION**

**ASSAULT**

***(In the Alternative: Maritime Battery)***

***(Against Defendant C. Combs)***

44. PLAINTIFF realleges and incorporates by reference, as though set forth fully at this point, each and every allegation contained herein.

45. On or about December 28, 2022, DEFENDANT C. COMBS committed assault against PLAINTIFF. DEFENDANT C. COMBS acted with the intent to cause PLAINTIFF harmful or offensive contact, and his acts placed PLAINTIFF in a reasonable apprehension of imminent harmful and offensive contact with her person and intimate parts, including when he violently grabbed her arm, physically restrained her, forced her to consume alcohol he had reason to know was laced with drugs, cornered her in the cinema, exposed his erect penis, and attempted to force her to perform oral copulation. PLAINTIFF did not consent to any of DEFENDANT C. COMBS' conduct.

46. As a direct and proximate result of DEFENDANT C. COMBS' conduct, PLAINTIFF has suffered and continues to suffer physical injury, emotional distress, economic loss, and harm to her health, strength, and daily functioning, all in an amount to be proven at trial.

47. DEFENDANT C. COMBS' conduct was willful, oppressive, and

malicious, and was carried out in conscious disregard of PLAINTIFF's rights and safety, entitling PLAINTIFF to an award of punitive damages.

48. *In the Alternative — Maritime Battery:* To the extent this Court determines that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law, which recognizes battery as an actionable tort and provides for recovery of compensatory and, where warranted, punitive damages. The substantive allegations and damages sought are incorporated herein by reference.

## SECOND CAUSE OF ACTION

## BATTERY

### (In the Alternative: Maritime Battery)

### (Against Defendant C. Combs)

49. PLAINTIFF realleges and incorporates by reference each and every allegation set forth above as though fully stated herein.

50. On or about December 28, 2022, DEFENDANT C. COMBS intentionally touched PLAINTIFF in a harmful and offensive manner without her consent. Specifically, DEFENDANT C. COMBS violently grabbed PLAINTIFF's arm, groped her legs, breasts, anus, and vagina, kissed her neck, face, and hands, and attempted to force her to perform oral copulation on him. PLAINTIFF did not consent to any contact by DEFENDANT C. COMBS. The touching was harmful and offensive to a reasonable person. PLAINTIFF sustained physical bruising and injury as a result.

51. As a direct and proximate result of DEFENDANT C. COMBS' conduct, PLAINTIFF has suffered and continues to suffer physical injury, emotional distress, economic loss, and harm to her health, strength, and daily functioning, all in an amount to be proven at trial.

52. DEFENDANT C. COMBS' conduct was willful, oppressive, and malicious, and was carried out with a conscious disregard of PLAINTIFF's rights and safety, entitling PLAINTIFF to an award of punitive damages.

53. *In the Alternative — Maritime Battery:* To the extent this Court determines

that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law, which recognizes battery as an actionable tort and provides for recovery of compensatory and, where warranted, punitive damages. The substantive allegations and damages sought are incorporated herein by reference.

**THIRD CAUSE OF ACTION**

**SEXUAL BATTERY**

*(In the Alternative: Maritime Battery)*

*(Against Defendant C. Combs)*

54. PLAINTIFF realleges and incorporates each and every allegation above as though fully stated herein.

55. On or around December 28, 2022, DEFENDANT C. COMBS committed sexual battery against PLAINTIFF within the meaning of California Civil Code § 1708.5. DEFENDANT C. COMBS acted with the intent to cause harmful or offensive contact with intimate parts of PLAINTIFF's body, including violently groping her legs, breasts, anus, and vagina. He caused harmful and offensive contact between an intimate part of his own body and PLAINTIFF's body. He caused imminent apprehension of further harmful or offensive contact with intimate parts of her body, and sexually offensive contact with PLAINTIFF resulted. PLAINTIFF did not consent to any of DEFENDANT C. COMBS' conduct. PLAINTIFF was incapacitated by the alcohol DEFENDANT C. COMBS forced her to consume and which she reasonably believes was laced with drugs, rendering her unable to freely resist.

56. As a direct and proximate result of DEFENDANT C. COMBS' conduct, PLAINTIFF has suffered and continues to suffer physical injury, emotional distress, economic loss, and harm to her health, strength, and daily functioning, all in an amount to be proven at trial.

57. DEFENDANT C. COMBS' conduct was willful, oppressive, and malicious, and was carried out in conscious disregard of PLAINTIFF's rights and safety, entitling PLAINTIFF to an award of punitive damages.

58. *In the Alternative — Maritime Battery:* To the extent this Court determines that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law, which recognizes sexual battery as an actionable tort and provides for recovery of compensatory and, where warranted, punitive damages. The substantive allegations and damages sought are incorporated herein by reference.

## FOURTH CAUSE OF ACTION

## PREMISES LIABILITY

### (In the Alternative: Maritime Negligence)

### (Against Defendant S. Combs)

59. PLAINTIFF realleges and incorporates by reference each and every allegation set forth above as though fully stated herein.

60. At all times relevant herein, DEFENDANT S. COMBS leased, occupied, and controlled the Victorious pursuant to the MYBA Charter Agreement executed by his agent JCMUS, Inc. As the charterer, DEFENDANT S. COMBS exercised exclusive control over who was permitted aboard, the activities that occurred on the vessel, and the conduct of the guests, including his son DEFENDANT C. COMBS.

61. DEFENDANT S. COMBS owed PLAINTIFF, as a crew member working aboard the vessel during his charter, a duty of reasonable care to maintain the premises in a safe condition and to refrain from conduct that created unreasonable risks of harm to those lawfully present.

62. DEFENDANT S. COMBS breached that duty by deliberately fostering an environment of open drug use, excessive intoxication, and unchecked violence and misconduct aboard the Victorious. He allowed and encouraged his son, DEFENDANT C. COMBS, and other guests to engage in dangerous and unlawful conduct without any safeguards, supervision, or consequences. He failed to take any steps to protect PLAINTIFF or other crew members from the foreseeable risk of harm created by the environment he maintained. This breach was not the result of inattention but of deliberate choice, as demonstrated by DEFENDANT S. COMBS' ability to immediately modify his conduct when specific visitors arrived, only to

17

resume the same dangerous environment upon their departure.

63. DEFENDANT S. COMBS' negligence was a substantial factor in causing PLAINTIFF's harm. Because of the environment DEFENDANT S. COMBS created and maintained, DEFENDANT C. COMBS believed he could act with impunity and did so, drugging and sexually assaulting PLAINTIFF. After the assault, DEFENDANT S. COMBS further caused harm to PLAINTIFF by paying off Captain Milkov to suppress any investigation or response.

64. As a direct and proximate result of DEFENDANT S. COMBS' negligence, PLAINTIFF has suffered and continues to suffer physical injury, emotional distress, economic loss, loss of employment, and harm to her health, strength, and daily functioning, all in an amount to be proven at trial.

65. DEFENDANT S. COMBS' conduct was willful, oppressive, and malicious, entitling PLAINTIFF to an award of punitive damages.

66. *In the Alternative — Maritime Negligence:* To the extent this Court determines that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law, which imposes a duty of reasonable care upon a charterer who exercises control over a vessel. The breach, causation, and damages alleged herein are incorporated by reference. PLAINTIFF further alleges that DEFENDANT S. COMBS, as the controlling charterer, owed PLAINTIFF a duty of seaworthiness and/or reasonable care under general maritime law, which he breached as described above.

**FIFTH CAUSE OF ACTION**

**AIDING AND ABETTING**

***(In the Alternative: Maritime Joint Tortfeasor Liability)***

***(Against Defendant S. Combs)***

67. PLAINTIFF realleges and incorporates by reference each and every allegation set forth above as though fully stated herein.

68. DEFENDANT C. COMBS committed assault, battery, and sexual battery against PLAINTIFF as alleged herein. DEFENDANT S. COMBS is liable as an

aider and abettor of these torts.

69. DEFENDANT S. COMBS knew that the tortious conduct was occurring and would occur. The environment aboard the Victorious — open drug use, suspected laced alcohol, individuals found severely incapacitated on the yacht, and repeated physical violence — put DEFENDANT S. COMBS on actual notice that guests, including his son, posed a risk of serious harm to crew members including PLAINTIFF. Moreover, after the assault occurred, DEFENDANT S. COMBS was informed of what had happened by his own staff, including Brendan Paul, Kristina Khorram, and/or Frankie Santella.

70. DEFENDANT S. COMBS substantially assisted and encouraged DEFENDANT C. COMBS' tortious conduct. By creating and maintaining an environment in which drug and alcohol use was normalized and all standards of conduct were abandoned, DEFENDANT S. COMBS communicated to DEFENDANT C. COMBS that he was free to act without restraint toward PLAINTIFF and other crew members. In addition, DEFENDANT S. COMBS facilitated access to alcohol and substances used to take advantage of individuals on the yacht, including PLAINTIFF. Moreover, after learning of the assault, DEFENDANT S. COMBS further assisted in the concealment of the tortious conduct by providing a financial payment to Captain Milkov to suppress any investigation or protective action on PLAINTIFF's behalf.

71. DEFENDANT S. COMBS' substantial assistance was a proximate cause of PLAINTIFF's harm. PLAINTIFF was assaulted because DEFENDANT C. COMBS operated in an environment that DEFENDANT S. COMBS deliberately cultivated, and PLAINTIFF was deprived of recourse because DEFENDANT S. COMBS bought the silence of those who could have helped her.

72. As a direct and proximate result of DEFENDANT S. COMBS' aiding and abetting, PLAINTIFF has suffered and continues to suffer physical injury, emotional distress, economic loss, and harm to her health, strength, and daily functioning, all in an amount to be proven at trial.

19

73. DEFENDANT S. COMBS' conduct was willful, oppressive, and malicious, entitling PLAINTIFF to an award of punitive damages.

74. *In the Alternative — Maritime Joint Tortfeasor Liability:* To the extent this Court determines that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law, which recognizes joint tortfeasor liability for those who substantially assist or encourage tortious conduct aboard a vessel. The substantive allegations and damages sought are incorporated herein by reference.

## SIXTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### *(In the Alternative: Maritime Intentional Infliction of Emotional Distress)*

### *(Against All Defendants)*

75. PLAINTIFF realleges and incorporates by reference each and every allegation set forth above as though fully stated herein.

76. The conduct of DEFENDANT C. COMBS, including drugging PLAINTIFF, physically restraining her, groping her intimate parts, cornering her in the cinema, exposing himself, and attempting to force her to perform oral copulation, was extreme and outrageous conduct that no reasonable person should be expected to endure. DEFENDANT C. COMBS acted with the intent to cause PLAINTIFF severe emotional distress, or in reckless disregard of the probability that his conduct would cause such distress.

77. The conduct of DEFENDANT S. COMBS was independently extreme and outrageous. Having been informed of his son's assault of PLAINTIFF, DEFENDANT S. COMBS responded not by protecting her but by paying off Captain Milkov to suppress any investigation, causing PLAINTIFF to be assigned to personally serve her attacker for the remainder of the charter, and ensuring she was isolated, silenced, and ultimately terminated without recourse. DEFENDANT S. COMBS acted with the intent to cause PLAINTIFF severe emotional distress, or in reckless disregard of the probability that his conduct would cause such distress.

78. As a direct and proximate result of Defendants' extreme and outrageous conduct, PLAINTIFF has suffered and continues to suffer severe emotional distress, including depression, anxiety, panic attacks, an eating disorder, suicidal ideations, and physical manifestations including epileptic seizures. PLAINTIFF's suffering has been ongoing since December 2022 and has fundamentally altered the course of her personal and professional life.

79. Defendants' conduct was willful, oppressive, and malicious, entitling PLAINTIFF to an award of punitive damages.

80. *In the Alternative — Maritime IIED:* To the extent this Court determines that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law, which recognizes intentional infliction of emotional distress as an actionable tort. The substantive allegations and damages sought are incorporated herein by reference.

## SEVENTH CAUSE OF ACTION
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### *(In the Alternative: Maritime Negligence)*
### *(Against Defendant C. Combs)*

81. PLAINTIFF realleges and incorporates by reference each and every allegation set forth above as though fully stated herein.

82. As a direct victim of DEFENDANT C. COMBS' conduct, PLAINTIFF was owed a duty of care. DEFENDANT C. COMBS breached that duty through the conduct alleged herein, including by forcing PLAINTIFF to consume alcohol he had reason to know was laced with drugs, physically restraining her, sexually assaulting her, and attempting to compel her to perform oral copulation. This conduct was negligent to the extent it is not found to have been intentional, and in any event foreseeably caused PLAINTIFF to suffer serious emotional distress.

83. As a direct and proximate result of DEFENDANT C. COMBS' negligent conduct, PLAINTIFF suffered serious emotional distress including depression, anxiety, panic attacks, an eating disorder, suicidal ideations, and epileptic seizures.

PLAINTIFF's emotional distress was severe and would be expected to cause significant suffering in a person of ordinary sensibilities.

84. As a result of DEFENDANT C. COMBS' negligence, PLAINTIFF has been generally, specially, and consequentially damaged in an amount to be proven at trial.

85. *In the Alternative — Maritime Negligence:* To the extent this Court determines that admiralty jurisdiction applies, PLAINTIFF asserts this cause of action under general maritime law's negligence standard, which imposes a duty of reasonable care. The substantive allegations and damages sought are incorporated herein by reference.

## **PRAYER**

WHEREFORE, PLAINTIFF GRACE O'MARCAIGH prays for judgment against all DEFENDANTS, jointly and severally, as follows:

1. For compensatory, general, and special damages according to proof, including past and future medical expenses, past lost wages, loss of earning capacity, loss of career, pain and suffering, loss of enjoyment of life, and emotional distress;

2. For punitive and exemplary damages against all Defendants, commensurate with the willful, oppressive, and malicious nature of each Defendant's conduct;

3. For attorney's fees to the extent permitted by law;

4. For costs of suit, pre-judgment interest, and post-judgment interest as permitted by law; and

5. For such other and further relief as the Court may deem just and proper.

Dated: April 21, 2026          **IVIE McNEILL WYATT PURCELL & DIGGS**

By:  _____
**RODNEY S. DIGGS, ESQ.**
Attorneys for Plaintiff,
**GRACE O'MARCAIGH**

22

## DEMAND FOR JURY TRIAL

Plaintiff GRACE O'MARCAIGH hereby demands a jury trial.

Dated: April 21, 2026                **IVIE McNEILL WYATT PURCELL & DIGGS**

By: _____
**RODNEY S. DIGGS, ESQ.**
Attorneys for Plaintiff,
**GRACE O'MARCAIGH**